Madyo A. Poletti v. Commissioner.
Poletti v. Commissioner
Docket Nos. 4824-63, 555-64.
United States Tax Court
T.C. Memo 1966-47; 1966 Tax Ct. Memo LEXIS 233; 25 T.C.M. (CCH) 266; T.C.M. (RIA) 66047; March 9, 1966
Edward H. Tenney, Jr., 611 Olive St., St. Louis, Mo., for the petitioner. Glenn L. Strong, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: This case involves another chapter [1] in what might otherwise be described as "The Perils of Poletti." Madyo A. Poletti, T.C. Memo. 1962-266, reversed and remanded 330 F. 2d 818 (C.A. 8, 1964), decision on remand affirmed, 351 F. 2d 345 (C.A. 8, 1965). Respondent originally *234 asserted deficiencies in the income tax of petitioner and additions to tax as follows: Deficiencies
Additions to tax
Docket
Taxable
Income
(Sec. 6653(a),
No.
year
tax
I.R.C. 1954)
555-64
1958
$18,256.70
$ 912.84
4824-63
1959
26,888.75
1,344.44 The cases have been consolidated for purposes of trial and brief. Many of the issues raised by respondent have been settled by petitioner and respondent. Remaining in issue is the deductibility of: (a) Certain specified payments to two sources of supply as publicity and promotional expenses and certain travel and entertainment expenses; (b) advances made to one Marianne Ozment Shayne; and (c) four items in petitioner's "Notes Receivable Miscellaneous" account as of January 1, 1958. Also in issue is the question whether or not petitioner negligently or intentionally disregarded the respondent's rules and regulations so as to be subject to additions to tax under section 6653 of the Internal Revenue Code of 1954. General Findings of Fact Some of the facts in this case have been stipulated. The record includes the original stipulation of facts, a supplemental stipulation *235 of facts, and a second supplemental stipulation of facts. [2]
The original stipulation of facts, as modified by the supplemental and second supplemental stipulation of facts, together with the exhibits attached thereto, is incorporated herein and made a part of our findings of fact by this reference. Madyo A. Poletti and Marian Poletti Hayes were husband and wife during the years 1958 and 1959 and resided in St. Louis, Missouri. They filed joint Federal income tax returns on a cash basis for the years 1958 and 1959 with the district director of internal revenue, St. Louis, Missouri. Marian Poletti Hayes was originally a party to this proceeding as a result of having executed the joint return but the petition herein has been dismissed as to her for lack of jurisdiction. Consequently, all references herein *236 to petitioner shall refer to Madyo A. Poletti. During the years 1958 and 1959, petitioner operated as sole proprietorships several employment agencies in the St. Louis area under the various names of Mapco, Barbara Hutton, Employers, Ford, and Cadillac as well as Bliss & Sons in Los Angeles, California. During 1958, petitioner had 19 employees in his St. Louis agencies and 47 employees in Bliss & Sons; the services of 11 of the latter were terminated in 1958. During 1959, petitioner had 30 employees in his St. Louis agencies, with respect to which the services of 9 were terminated during that year; petitioner had 30 employees in Bliss & Sons, with respect to which the services of 19 were terminated during that year. During 1958 and 1959, petitioner also was a 50-percent partner of Reserve Office Force Company, St. Louis, Missouri. The partnership engaged in the business of employment contractor, furnishing its own employees to others as temporary office help. The partnership employed over 1,200 people in each of such years. In addition, during the years 1958 and 1959, petitioner was a vice president and 50-percent stockholder of Atlas Manpower, Inc., a corporation which furnishes *237 hourly workers. Issue 1 Disallowance of a Portion of the Deduction Taken for Publicity, Promotion, and Travel Expenses Findings of Fact In his income tax returns for the years 1958 and 1959 petitioner claimed deductions for business publicity, travel, entertainment, and promotional expenses in the total amounts of $34,347.06 and $38,602.75, respectively. After concessions on the part of both parties, there remains at issue, for 1958, $10,278.20 (consisting of $1,535 paid to The Diamond Shop, a jeweler in St. Louis, and $8,743.20 travel expenses), and, for 1959, $10,319.10 (consisting of $7,592 to The Diamond Shop, and $2,727.10 to Hess & Culbertson, another jeweler in St. Louis). Respondent in arriving at his concession applied the Cohan rule [3] to a certain portion of the expenditures involved. Of the total of $24,068.86 for 1958 not in issue herein, specific items representing $6,171.54 were conceded by petitioner as not deductible, specific items representing $9,205.55 were conceded by respondent as deductible, and the balance of $8,694.77 [4] was disposed of by applying percentages ranging from 40 to 60 percent in petitioner's favor. *238 Of the total of $28,283.65 for 1959 not in issue herein, specific items representing $5,244.01 were conceded by petitioner as not deductible, specific items representing $9,157.90 were conceded by respondent as deductible, and the balance of $13,881.74 was disposed of by applying percentages ranging from 40 to 60 percent in petitioner's favor. During 1958, petitioner made payments aggregating $2,135 to The Diamond Shop; respondent allowed one payment of $600 and disallowed the balance of $1,535. During 1959, petitioner made payments aggregating $8,876 to The Diamond Shop; respondent allowed one payment of $1,284 and disallowed the balance of $7,592. During 1959, petitioner made payments of $3,288.60 to Hess & Culbertson; respondent allowed $336.90 of a $561.50 payment, and disallowed the balance of $2,727.10. Petitioner, during the years 1958 and 1959, pursued a "giveaway" program, in which he would buy large quantities of merchandise, often distressed or close-out items, which included, among other things, jewelry, cigarette lighters, and wrist watches. These items were purchased from other sources of supply as well as from The Diamond Shop and Hess & Culbertson. It was petitioner's *239 practice to give these items away to applicants to his firms for employment by others, employees of his firms, and customers with whom he did or hoped to do business. Petitioner's employees periodically prepared a list of petitioner's "key accounts," which was used as a mailing list for the sending of promotional items. Preferred customers and people whom petitioner's agencies were trying to cultivate were denoted by asterisks and were sent more-expensive items. Petitioner did not personally determine the gift to be given any particular customer and neither of his employees who testified knew which customers, if any, received anything which was purchased from either The Diamond Shop or Hess & Culbertson. Certain of petitioner's employees received gifts from petitioner which were purchased from The Diamond Shop or from Hess & Culbertson. An undisclosed amount of merchandise that was purchased from various sources during the years in issue had not been given away by petitioner as of December 31, 1959. On his 1958 return, petitioner claimed deductions for travel expenses in the aggregate amount of $9,343.46. Of this amount, $8,743.20 remains in issue. The disallowed payments involved *240 checks to hotels and restaurants in Los Angeles, Chicago, Washington, D.C., Toledo, Las Vegas, and Miami, checks made out to cash, and a few checks to certain other persons. Respondent allowed petitioner to deduct certain amounts representing portions of * checks made out to cash issued in Los Angeles, Chicago, Washington, D.C., and Toledo during the times of petitioner's trips to those cities. In 1958, petitioner took three trips to Los Angeles and one trip each to Chicago, Washington, D.C., Toledo, and Miami. Petitioner's wife and five-year-old daughter accompanied him on trips to Los Angeles in January, to Chicago in March, to Washington, D.C., in May, to Toledo in June, and to Miami in November. At least some of their expenses are included in the disallowed travel expenses. Among the purposes of the three trips to Los Angeles was the need for petitioner to look after the affairs of his employment business in Los Angeles. In addition, petitioner desired to find a location in the Los Angeles area suitable *241 for opening another agency, which at a later date he did open. One of the purposes of the trip to Chicago was to meet with persons with whom he interchanged job orders and account lists. One of the purposes of the trip to Washington, D.C., was to see how the employment agency business was carried on there and to see if he could get some business in the area of secretary employment and governmental contracts. One of the purposes of the trip to Miami was for a convention of the National Association of Employment Agencies, of which petitioner at that time was a director, and one of the purposes of the trip to Toledo was for an emergency meeting of the directors of the National Association of Employment Agencies. A check of $300 to Marlin Lieberstein covered the expenses of flying him to St. Louis for an interview subsequent to which he was hired by petitioner. A check of $115 to Leonard Greenberg and a check of $200 to Security Mutual Bank were for travel expenses in connection with Greenberg's becoming general manager of petitioner's Los Angeles office. A check for $150 to Lawrence D. Cohn was for expenses in arranging for him to become petitioner's credit manager in Los *242 Angeles. John D. Ryan left the employ of petitioner prior to January 1, 1958. Opinion Petitioner contends that all of the disbursements at issue are deductible as business expenses. Respondent, on the other hand, takes the position that petitioner has failed in his burden of proof to show that they were ordinary and necessary expenses of his business. Petitioner is an energetic and persistent businessman, who owned or otherwise participated in various employment agencies in St. Louis and Los Angeles. His difficulty with the taxing authorities stems from the fact that his business acumen did not extend to the keeping of adequate records supporting his allegations that certain expenditures made by him during the years in question - for travel, entertainment, and promotion - constituted ordinary and necessary business expenses within the meaning of section 162 of the Internal Revenue Code of 1954. As a consequence, only 40 percent of the amounts of such expenditures deducted by petitioner on his tax returns was allowed by respondent; petitioner conceded slightly more than 30 percent as nondeductible, and the balance of slightly less than 30 percent is in *243 issue. In arriving at his disallowances during the course of settlement negotiations, respondent allowed specific payments and also applied the Cohan rule [5] so as to permit the deduction of a certain percentage of other payments made by petitioner; accordingly, the amount of the deficiencies originally claimed herein was correspondingly reduced. Respondent argues strenuously that, as a consequence of his action, we should not further apply the Cohan rule and that no further deductions should be allowed petitioner, except to the extent that he can prove not only that the expenditures were ordinary and necessary but also the precise nature and amount of each item claimed as being expended for such purpose. Petitioner, on the other hand, argues equally strenuously that we should accept vague and general evidence as sufficient to prove the business purpose of the expenditures and that, in such event, we are still required to apply the Cohan rule to the items in dispute. As might be expected, the applicable standard lies somewhere between these two extremes.[6] Respondent cannot encase himself in the armor plate of the Cohan rule *244 simply because he has applied it in settlement negotiations. To permit this would be to accord respondent's determinations a judicial finality to which they are not entitled. By the same token, petitioner cannot escape the brooding omnipresence of the fact that he has the burden of proof nor of the fact that, in applying the Cohan rule, the courts can and do "bear heavily * * * upon the taxpayer whose inexactitude is of his own making." See Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), at p. 544. Within this context, it is entirely proper to take into account the fact that respondent, in the course of settlement negotiations, has already given full weight to the "connectivity of business purpose" with respect to the deductibility of the expenditures. See Poletti v. Commissioner, 330 F. 2d 818 (1964), at p. 824; Mayrath v. Commissioner, 357 F. 2d 209 (C.A. 5, Feb. 17, 1966), affirming 41 T.C. 582 (1964). *245 Against this background, we proceed to consider the evidence before us. At the outset, we think it not without significance that the clarity of petitioner's own testimony varied from issue to issue. He seemed able without hesitation to pinpoint in his own mind various alleged travel expenditures within minutes of finding great difficulty in remembering what happened to the merchandise purchased from The Diamond Shop and Hess & Culbertson, some of which, by petitioner's own admissions, was apparently of sufficient value to preclude characterization as "baubles." Petitioner's testimony is thus to a large degree counter-productive from his point of view; the ability to recall precisely tends to weaken the validity of his generally vague testimony and vice versa. In any event, we do not believe that, under such circumstances, petitioner's uncontradicted testimony is entitled to be accorded that degree of credibility with which it might otherwise be endowed. With respect to the payments to The Diamond Shop and Hess & Culbertson, petitioner's records were woefully inadequate. Nor did he seek to offer any evidence from the records of these two sources nor offer any explanation as to *246 his failure so to do. Moreover, although it may be that the items purchased from these two sources were used for business gifts as petitioner claims, the fact is that petitioner was allowed to deduct payments to other sources for items similar to those acquired from The Diamond Shop and from Hess & Culbertson and for certain items purchased from these two sources themselves. Petitioner's testimony was far from convincing as to the crucial fact whether the disallowed payments to The Diamond Shop and Hess & Culbertson were for items that were actually used for business purposes. Moreover, the testimony indicates that some of the merchandise alleged to have been purchased was still in petitioner's possession at the close of 1959. Nevertheless, we are satisfied that, to a degree, petitioner did purchase and use for business purposes, during the taxable year, merchandise from The Diamond Shop and Hess & Culbertson beyond the amounts allowed by respondent. We have made the best approximation possible and conclude that, of the amounts still in issue as to these items, the following sums represent expenditures which were proximately related to the carrying on of petitioner's business and, *247 therefore, deductible under section 162: For 1958, $200 out of the $1,535 in dispute; for 1959, $500 out of the $10,319.10 in dispute. As to the travel expenses, we find petitioner's testimony somewhat more precise but almost as unconvincing. In several instances, petitioner identified the people who benefited from the expenditures for food and entertainment as persons with whom he had business relationships, but he was for the most part extremely vague as to whether the particular expenditures had business significance rather than constituting entertainment for friends who happened also to be business connections. On many of his trips, petitioner was accompanied by his wife and daughter and there is insufficient testimony to show that part of the expenditures were not attributable to their expenses. Finally, as noted in our findings of fact, respondent allowed as travel expenses certain amounts representing portions of checks to cash issued in the cities which petitioner visited. * However, we are nevertheless satisfied that part of the $8,743.20 in dispute in this regard for 1958 was expended for purposes proximately related to petitioner's business. We have made the best approximation *248 we can and conclude that $500 fits into this category and should be allowed as a deduction beyond the amounts already allowed. In addition to the foregoing, we also conclude that the expenditures in 1958 represented by checks for $300 to Marlin Lieberstein, $115 to Leonard Greenberg, $200 to Security Mutual Bank and $150 to Lawrence D. Cohn, or an aggregate of $765, represented business expenditures which petitioner should be allowed to deduct. As to the $100 payment to John D. Ryan, it appears that he had left petitioner's employ at least five months prior to the date of the payment and we are unconvinced that petitioner's vague statement that he did a special job for petitioner is sufficient to support the conclusion that the expenditure involved is properly deductible. Issue 2 Disallowance of the Bad Debt Deduction in 1958 for Advances Made to Marianne Ozment Shayne in the *249 Years 1954 through 1956 Findings of Fact Petitioner and Marianne Ozment Shayne (hereinafter sometimes referred to as Marianne) were formerly married and were divorced in August 1951. In December 1954, Marianne went to Cincinnati, Ohio, and began making plans to enter the employment business there. On several occasions she contacted petitioner to request help on ideas for her agency as well as money with which to begin operations. Marianne opened "Junie's Employment Agency" in Cincinnati in March 1955 and, except for a four-month period in 1961 when she was ill, that agency has operated continuously and is still in operation. Marianne was advanced money from petitioner at various times, for which she signed notes. Both Marianne and petitioner testified that they contemplated petitioner having an interest in the business if it was successful but that there never was a specific agreement as to percentages. Marianne signed 9 notes dated from December 31, 1954 to April 6, 1956, totaling $4,953.66. The first 7 notes contain no due date and the last 2 provide for repayment "as soon as possible." Marianne has been unable to repay these advances from the time she signed the first *250 note in 1954 through 1961, although she remains in the same business at the same location. Petitioner on July 28, 1958 asked what her intentions were insofar as liquidating the notes was concerned. Not hearing from her, he wrote the notes off in 1958. Petitioner deducted the $4,953.66 as an "agency investment-abandoned" on his 1958 Federal income tax return. Opinion Petitioner is attempting to justify the deduction of amounts of money advanced to Marianne for Junie's Employment Agency as a business bad debt deduction. We are forced to deny the deduction because petitioner simply has not shown when, if ever, the advances became worthless, even if we assume that a proper debtor-creditor relationship existed between petitioner and Marianne. Petitioner faces the same barrier even if we construe his claim as a loss in a transaction entered into for profit on the ground that he was a partner of Marianne - a position which it would be difficult for him to maintain since he testified at the trial that he did not intend to be a partner and it seems clear that he was not responsible for any share of the losses of the business. The fact is that Marianne was still in business at the end *251 of 1958 and was still in business at the time of the trial herein. Her insolvency, if in fact it existed in 1958, would not, standing alone, show more than that the account was perhaps uncollectible in part. See Miriam Coward Pierson, 27 T.C. 330, 339 (1956), affd. 253 F. 2d 928 (C.A. 3, 1958); Trinco Industries, Inc., 22 T.C. 959, 965 (1954); Higginbotham-Bailey-Logan Co., 8 B.T.A. 566, 580 (1927). The mere fact that petitioner's requests for payment culminating in the final request in July 1958 were unanswered by Marianne is of no help to petitioner. Mere failure to pay on demand is not proof of worthlessness. Prescott State Bank, 11 B.T.A. 147 (1928). We hold that petitioner has failed to sustain his burden of proof on this issue. Issue 3 Disallowance of Bad Debt Deduction in the Year 1959 of Four Accounts of Petitioner Findings of Fact In his 1959 return, petitioner deducted $2,770.20 as a business expense which he called "Advances charged off." The amount that remains in issue is $2,164.20, which is comprised of four entries that were on petitioner's general ledger under "Notes Receivable Miscellaneous" *252 on January 1, 1958. They are the following: Date
Name
Amount
1953-1956
John Ryan
$ 805.00
1/31/56
Junior Job Center
500.00
10/31/56
Robt. Winkler
359.20
5/21/57
Deposit Tide Agency-Cal.
500.00
$2,164.20
John Ryan was employed by petitioner as a department manager but left the employ of petitioner prior to January 1, 1958. Opinion Petitioner seeks to justify the deduction of the four accounts totaling $2,164.20 as "Advances charged off." Respondent asks us to deny petitioner the deduction because he has proved nothing that would allow such a deduction other than that the four accounts were entered on his books as "Notes Receivable Miscellaneous" as of January 1, 1958. Petitioner states that advances to John Ryan and Robert Winkler were to be repaid only out of future commissions and that when they left (allegedly in 1958), under the terms of the agreement, petitioner could not collect from them. Petitioner has failed to prove these statements to be fact. Even assuming arguendo that he had proved them, he has not shown why 1959 should be the correct year for the deductions, especially if they left petitioner's employ in 1958. Indeed, John *253 Ryan left petitioner's employ at the end of 1957. As to the accounts of Junior Job Center and Tide Agency, petitioner claims these were expenses of buying the two agencies, whose names he used and attempted to exploit with his own employees, but found no business there and abandoned them. Even assuming they were deductible expenses, petitioner has failed to prove any fact that would substantiate the deduction in the year claimed. We hold that petitioner has failed to sustain his burden of proof on this issue. Issue 4 Additions to Tax Due Under Section 6653(a) of the Internal Revenue Code of 1954 Findings of Fact Petitioner, along with his attorney and accountant, attended a conference in December 1956, at which were present respondent's agent Joyce and Donald T. Shawl, an employee of respondent. At this conference, petitioner was asked to produce his records in connection with entertainment, persons entertained, and other records of that sort. He stated he had no such records at that time. A part of the underpayment of income tax for each of the years 1958 and 1959 was due to negligence or intentional disregard of rules and regulations. Opinion
*254 Petitioner at the trial offered no proof as to the 5 percent additions to the deficiencies claimed to be due under section 6653(a) because of negligence or intentional disregard of respondent's rules and regulations. Respondent relies on this failure of proof and also on the assertion that the rules and regulations on record-keeping to support deductions was called to petitioner's attention in 1956, prior to the taxable years involved herein. Even if we were to give no weight to petitioner's exposure in 1956 to the record-keeping requirements of the revenue authorities, we think that petitioner's record-keeping was in fact so grossly inadequate as to constitute a clear violation of statutory standard. On the basis of the record before us, we hold that a part of the underpayment in tax for each of the two years was due to negligence or intentional disregard of rules and regulations and, therefore, find that petitioner is liable for the additions to tax specified in section 6653(a). Decisions will be entered under Rule 50. Footnotes
1. There is at least one more chapter to be written; Madyo A. Poletti, Docket No. 2668-65 (taxable years 1960 and 1961).↩
2. At the trial, respondent objected to certain of petitioner's exhibits attached to the original stipulation of facts on the ground of relevancy. Respondent has not pressed the point on brief and we consequently consider that he has abandoned his objections; in any event, we find that the exhibits involved are relevant - the weight to be given to them is another matter.↩
3. Cohan v. Commissioner, 39 F. 2d 540↩ (C.A. 2, 1930). 4. There is a $3 discrepancy in the stipulated figures.↩
*. By official Tax Court order dated 5/12/66, the words "certain amounts representing portions of" were substituted for the words "an aggregate of $1,600 represented by."↩
5. Cohan v. Commissioner, supra.↩
6. It is worthy of note that the full acceptance of either position would, in all probability, seriously inhibit settlement negotiations and result in trials of many more cases involving deductions for travel, entertainment, and promotion expense - issues which are more appropriately disposed of without litigation.↩
*. By official Tax Court order dated 5/12/66, the words "as travel expenses certain amounts representing portions of checks to cash issued in the cities which petitioner visited." were substituted for the words "certain checks to cash issued in the cities which petitioner visited as travel expenses."↩