ANAHEIM PAPER MILL SUPPLIES, INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent SALVATORE M. TAORMINA and MARIANGELA TAORMINA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anaheim Paper Mill Supplies, Inc. v. Commissioner
Docket Nos. 6989-76 7236-76
United States Tax Court
T.C. Memo 1978-86; 1978 Tax Ct. Memo LEXIS 429; 37 T.C.M. (CCH) 403; T.C.M. (RIA) 780086; March 1, 1978, Filed *429 Corporate petitioner paid individual petitioner $8,935.82 to reimburse expenses the latter incurred while attending the University of Portland. Held, the expenditure was inherently personal to the individual petitioner and cannot be characterized as an ordinary and necessary business expense of the corporation. Held further, neither was the payment intended as compensation. Held further, the expenses incurred by the individual petitioner in acquiring a college diploma were not ordinary and necessary expenses incurred in carrying on his trade or business. Howard M. Larsen, for the petitioner in docket No. 6989-76. Thomas J. O'Keefe, *430 for the petitioners in docket No. 7236-76. James D. Vandever, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Anaheim Paper Mill Supplies, Incorporated's income tax returns for its taxable years ended January 31, 1972, January 31, 1973 and January 31, 1974 were audited by the respondent who, on April 23, 1976, issued a statutory notice of deficiency for those years in the total amount of $111,509.00.On June 18, 1976 respondent issued a statutory notice of deficiency to Salvatore M. Taormina and Mariangela Taormina for their taxable year ended December 31, 1973 in the amount of $4,020. These two cases have been consolidated for trial, briefing, and decision. Due to concessions made by the parties, two issues remain for our determination: (1) whether Anaheim Paper Mill Supplies, Incorporated may deduct under section 162, I.R.C. 1954 the $8,935.82 it paid Salvatore M. Taormina in its taxable year ended January 31, 1973 to reimburse amounts he had expended for his education; and (2) whether Salvatore M. Taormina's receipt of such amount constituted income for his calendar year 1973. FINDINGS OF FACT Some of the facts *431 have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner Anaheim Paper Mill Supplies, Incorporated (hereinafter APMSI) is a corporation organized in California on December 2, 1954. It maintained its corporate office in Anaheim, California at the time of filing the petition herein. The founder, president, and chairman of the board of APMSI is Cosmo V. Taormina, father of petitioner Salvatore M. Taormina. The corporation is primarily engaged in the pick-up and disposal of rubbish and the recycling of paper. PetitionersSalvatore M. Gaormina (hereinafter Taormina) and Mariangela Taormina, husband and wife, resided in Anaheim, California at the time the petition herein was filed. Their joint Federal income tax return for the calendar year 1973 was timely filed. Upon his graduation from high school in 1961 Taormina enrolled in the University of Portland. He did not complete his degree requirements, instead he dropped out of school and began work for APMSI in June of 1964. Taormina was named general manager of APMSI in 1968 and in 1972 was additionally named vicepresident *432 thereof. In 1966 APMSI was involved in union negotiations with the assistance of legal counsel.During the first half of 1974 Taormina was responsible for such negotiations on behalf of eight disposal companies. In 1975 Taormina represented all Orange County Solid Waste employers in their union negotiations. In addition, Taormina was selected by the Orange County disposal companies to represent them on the State Solid Waste Management Board. Although there was no express requirement that Taormina's retention of employment as general manager of APPSI depended on his obtaining a college degree, Taormina attended various colleges in Southern California while working for APMSI between 1964 and 1971. It was determined that Taormina could best complete his college education by returning to the University of Portland and completing classes normally taken in the first two years of a college degree program. An agreement was reached between Taormina and APMSI that Taormina would attend the University of Portland from August 15, 1971 to May 15, 1972 for the purpose of completing his degree requirements. It was further agreed that Taormina would continue to receive his normal compensation *433 and would, in addition, receive reimbursement from APMSI for his educational and travel expenses. Pursuant to this agreement Taormina went to Portland on August 25, 1971 to commence his course of study at the University of Portland. Taormina was accompanied on his move to Portland by his wife and two children. While in Oregon he rented a two bedroom house and made the following expenditures: Living Expense
house rental
$1,699.00
furniture
669.80
phone
139.95
utilities
251.14
household supplies
188.07
food expense
1,042.82
medical
85.10
Total
$ 4,075.88
Moving and Set Up Expense
Greyhound Movers
$ 250.80
household set up
336.40
travel expense
368.45
cold weather clothing
261.82
Total
$ 1,217.47
Education and Supplies
University of Portland
$ 3,530.00
Montessori (for Cosmo, Jr.)
731.50
books and supplies
382.65
Total
$ 4,644.15
Miscellaneous Expense
$ 429.62
Total Expenses
$10,367.12
While a student at the University of Portland he completed the following courses: Business Law Risk Management Contemporary Issues in Management Principles of Economics II Studies in English Literature Philosophy of Man Effective Communication *434 Investments International Business Operations Market Analysis and Forecasting Industrial Organization and Social Control Philosophy of Knowledge Civilization in Church and World Special Topics in Metaphysics During the time Taormina was in Portland he continued to receive his full salary from APMSI. [1] Taormina remained active in the business affairs of APMSI, making numerous phone calls to the corporate offices and returning to Anaheim eight times. He also maintained his personal residence in Anaheim, California. Taormina completed the courses necessary to receive his B.A. from the University of Portland, majoring in business administration. He returned to Anaheim, California on May 15, 1972 and resumed his duties with APMSI on a full-time basis. On January 26, 1973 Taormina received a check in the amount of $8,935.82 from APMSI. t/his payment was intended as reimbursement for expenses incurred while attending *435 the University of Portland.This amount covered all of Taormina's expenditures while in Portland set forth above, except those for furniture rental and Montessori. APMSI deducted this payment in its Federal income tax return for its taxable year ended January 31, 1973. Taormina did not report the $8,935.82 reimbursement on his 1973 Federal income tax return. OPINION The two issues before us--whether APMSI may deduct the $8,935.82 paid to Taormina to reimburse the amount he expended in completing the degree requirements at the University of Portland and whether Taormina must include this amount as gross income without a countervailing section 162 deduction--are closely related but not, per se, reciprocally determined. APMSI (and, apparently, at least one of its local competitors) has a policy of paying for the educational expenses of its employees. Behind this policy is the feeling that it is beneficial to the business to have educated employees. To this end AMPSI paid the costs for Richard Lopez's participation in a G.E.D. program which resulted in the completion of his high school education. Lopez was a foreman for APMSI. Another employee, James Sulpizio, a dispatcher *436 and office manager, attended classes at the University of California at Irvine. He was reimbursed for the cost of his tuition and books by Anaheim Disposal. A former employee testified that APMSI had encouraged him to attend college level courses at its expense. APMSI gave him a free hand in choosing which school he would attend and offered to allow him time off from work for college attendance without reduction in pay. Apparently, the only requirement was that he take business related courses, prerequisites thereto, or college degree requirements. He did not take advantage of this offer. There is testimony to the effect that other employees attempted some further education as a result of APMSI's educational inducement program, but the extent of their participation appears to have been minimal. Apparently, other of Taormina's siblings attended college while either working for APMSI or Anaheim Disposal, Inc., although the record is confused as to exactly which company they worked for and the extent of the educational benefits they received. In view of all the foregoing APMSI contends that the payment of Taormina's educational expense was an ordinary and necessary business *437 expense. On the other hand respondent alleges that APMSI's payment of Taormina's educational expenses was not an ordinary and necessary business expense. To that end respondent analogizes the situation herein to the situation in Rapid Electric Co. v. Commissioner,61 T.C. 232 (1973) and Challenge Manufacturing Co. v. Commissioner,37 T.C. 650 (1962). Both Rapid Electric and Challenge dealt with expenses paid by a corporation on behalf of its sole shareholder. Herein the expense in question related to an employee who was the son of the sole shareholder. We do not impute a constructive dividend to Taormina, so we do not find these cases clearly dispositive. Respondent has characterized the reimbursement of Taormina's expenditures as an educational expense that is not an ordinary and necessary business expense due to the absence of a direct relationship between APMSI's business and the courses Taormina attended in obtaining his B.A. degree from the University of Portland. It is, therefore, inherently personal to Taormina. APMSI counters that the general education obtained by Taormina at the University of Portland enhanced his management *438 skills and his ability to communicate both with the public and APMSI's employees. APMSI relies on Glasgow v. Commissioner,T.C. Memo. 1972-77, affd. 486 F.2d 1045 (10th Cir. 1973). We find this reliance to be unfounded. Unlike Glasgow, APMSI has not demonstrated a direct relationship between Taormina's course load and the specific skills required for his position. Because the education was general in nature, there is no proximate relationship between the payment and the type of expenses customarily characterized as ordinary and necessary to APMSI's business.See Teeling v. Commissioner,42 T.C. 671 (1964). APMSI alternatively argues that, if we find the educational expense to have been inherently personal to Taormina, it should be deductible by APMSI as compensation. In order for the payment to be characterized as compensation the parties, at the time of distribution, must have intended the payment to be compensatory in nature. Paula Construction Co. v. Commissioner,58 T.C. 1055 (1972), affd. 474 F.2d 1345 (5th Cir. 1973). It has been stipulated that the payment was intended to reimburse Taormina *439 for the expenses he incurred while attending the University of Portland. APMSI has failed to demonstrate the existence of an element of compensation in the payment of Taormina's educational expenses. Arc Realty Co. v. Commissioner,34 T.C. 484 (1960), appealed on other issues, 295 F.2d 98 (8th Cir. 1961). Neither has proximate relationship been made between the payment and the services rendered by Taormina. Estate of Beck,56 T.C. 297, 350 (1971). We see no reason why a "corporate father" should fare any differently than a natural father insofar as the deductibility of general college expenses are concerned.We find the payment to be a gift to Taormina and, as such, nondeductible. Turning to Taormina, he asserts that his educational expenditures are deductible by him as ordinary and necessary business expenses. Respondent again contends that such expenditures were personal to Taormina. An employee may deduct as ordinary and necessary costs that relate to his trade or business of being an employee. Primuth v. Commissioner,54 T.C. 374 (1970). Thus, to be deductible the education received must bear a specific *440 or direct relationship to his employment. Kornhauser v. United States,276 U.S. 145 (1928). Once the expense is found to be an ordinary and necessary business expense, if the employee is reimbursed for such expense after an accounting to his employer, he need not report the deduction and reimbursement on his tax return. Section 1.162-17(b), Income Tax Regs. Conversely, if the expense is not found to be an ordinary and necessary business expense the employee will have no deduction and the reimbursement will be income to him unless it is excludable on other grounds. Because we have found the reimbursement to have been a gift from APMSI to Taormina, Taormina need not include the payment as income for his taxable year 1973. Sec. 102. However, we do not find his expenses to be deductible. When Taormina undertook his course of study at the University of Portland he did so for the purpose of acquiring a B.A. degree. His course work was general in nature. We accept his contention that he became more articulate and proficient as a result of this education. However, a general education is comparable to a capital asset rather than to an ordinary and necessary expense. *441 Welch v. Helvering,290 U.S. 111 (1933). We find Taormina's course of study, undertaken in order to complete the University of Portland degree requirements, to be inherently personal and not directly related to his employment. Carroll v. Commissioner,51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969). Receipt of an undergraduate degree qualified Taormina for any number of occupations that were substantially different from his employment at APMSI. Glenn v. Commissioner,62 T.C. 270 (1974). Section 1.162-5(b)(3), Income Tax Regs.
Footnotes
1. He also continued to receive his full salary from Anaheim Disposal, Inc., a corporation owned 25 percent by Taormina and 75 percent by his siblings. It was founded in 1968 and primarily engaged in rubbish pick-up and disposal for large commercial accounts.↩