**HALLMARK CARDS, INC., Plaintiff**

v.

**UNITED STATES of America, Defendant.**

No. 13149.

United States District Court
W. D. Missouri, W. D.

Dec. 13, 1961.

Hillix, Hall, Hasburgh, Brown & Hoffhaus, by Richard H. Brown, Kansas City, Mo., for plaintiff.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for defendant.

DUNCAN, District Judge.

Plaintiff, a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri, instituted this action against the defendant under the provisions of Title 28 U.S.Code, § 1346(a) (1), to recover the sum of $13,-460.98 with interest for the payment by the plaintiff of this amount under protest, to the District Director of Internal Revenue, Kansas City, Missouri, and withholding and Federal Insurance Contributions Act taxes.

The case was tried before the court on December 4, 1961, and the facts, as revealed by the plaintiff's evidence, are not disputed by the Government.

Plaintiff is primarily engaged in the manufacture of greeting cards and other related products, with plants in several places throughout the country, and at this time employs approximately 6400 people. The amount in controversy involves the year 1955.

For a number of years prior to 1955, the plaintiff had held annual Christmas parties for its employees. Because of the number of employees, it was finally determined that such parties were entirely unsatisfactory. A considerable number of the employees were unmarried and the gift of turkeys or food products would not be desirable.

Many of the employees' homes were away from Kansas City, and as soon as the plant closed before the Christmas Holidays, such employees were ready to leave for their homes, and could not or did not avail themselves of the pleasures of the Christmas parties.

It was also determined that the problem of providing entertainment, food and other things incidental to such parties, and the cleaning up process subsequent

thereto, had gotten entirely out of hand, and as a substitute therefor, plaintiff instituted the Gift Certificate plan for 1955, and this plan has been in effect since that time.

Shortly prior to Christmas of 1955, plaintiff presented to each of its regular employees (except salesmen) who had been in its employ more than one year, a Special Gift Certificate [1] in the amount of $25.00, and to its part-time employees who had been in the service of the company one year or more, a $15.00 Special Gift Certificate. To all of its employees who had been in its employ less than one year, it gave a gold pencil. The Special Gift Certificates were redeemable in merchandise at any store in the country that handled or sold Hallmark products.

The amounts provided in the gift certificates had no relationship to the amount of the earnings of the recipients. The executive vice-president received a gift certificate in the same amount as the lowest paid employee who had been with the company more than one year. The salesmen, having a different financial arrangement with the company with respect to their employment, were not included, but just what that arrangement was, does not appear from the evidence.

A tax on the value of the Special Gift Certificate was not withheld by the plaintiff from the wages or salary of the recipients, none of whom, so far as the record reveals, included the value thereof as income in their income tax returns for the year 1955.

Plaintiff took credit in its income tax returns for the amount of such Special Gift Certificates, which were in addition to a special incentive bonus regularly paid by the plaintiff to its employees based upon their output, and certain other benefits such as paid vacation, retirement pay, medical services and insurance.

It is the Government's contention, based upon these facts, that the value of the Special Gift Certificates was income to the employees under the provisions of the Internal Revenue Code of 1954, Sec-

[1]. "A SPECIAL GIFT CERTIFICATE
from
HALLMARK CARDS

Upon presentation of this Certificate, properly endorsed by the bearer at a qualified store
(a store that handles Hallmark Cards)
Hallmark Cards, Incorporated will pay the sum of $25.00 (Twenty-Five Dollars

HALLMARK CARDS
J. C. Hall

ENDORSEMENT BY BEARER:

For value received, I hereby endorse this bond to:

    Store ———

    City ———

Signed ———
(by person to whom Bond was issued)

        Date ———

Issued to ———
December, 1955
Good until July 1, 1956

ENDORSEMENT BY PARTICIPATING STORE:

We have honored this bond in payment for merchandise selected in our store.

    Please credit our account
    Please send check

Store ———

By ———
    Date ———"

tion 3401, 26 U.S.C. § 3401, and the regulations promulgated pursuant thereto, and that the plaintiff should have withheld the tax thereon.

On the other hand, it is plaintiff's contention that the certificates are a pure gratuity; a Christmas gift awarded for the purpose of promoting goodwill among its employees, and incidentally, among the dealers who sold Hallmark products, who likewise derived a benefit from the redemption of such certificates.

Section 3402 of the Internal Revenue Code of 1954, 26 U.S.C. § 3402, requires every employer to deduct from the wages of an employee, a specified amount of tax for application against the employee's annual federal income tax liability. The section is restricted, however, to those employers "making payment of wages". Section 3401(a) defines "wages" as—

"For purposes of this chapter, the term 'wages' means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash; * * *."

Under § 3101 Title 26, the Federal Insurance Contributions Act, other withholdings are required. "Wages" for this purpose is defined in Section 3121 as follows:

"For purposes of this chapter, the term 'wages' means all remuneration for employment, including the cash value of all remunerations paid in any medium other than cash; * *."

For the purpose of construing § 3401, the Commission issued withholding tax Regulation 31.3401(a)–1(b) (10), which provides:

"*Facilities and privileges*—Ordinarily facilities or privileges (such as entertainment, medical services, or so-called 'courtesy discounts' on purchases), furnished or offered by an employer to his employees generally, are not considered as wages subject to withholding if such facilities or privileges are of relatively small value and are offered or furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiency of his employees."

In a 1959 Revenue Ruling, 59–58 C.B. 59–1, p. 17 the Commissioner stated:

" * * * that the value of a turkey, ham or other item of merchandise of a similar nominal value, distributed by an employer to an employee at Christmas, or a comparable holiday, as part of a general distribution to employees engaged in the business of the employer as a means of promoting their good will, does not constitute wages subject to income tax withholding or wages for Federal Insurance Contributions Act or Federal Unemployment Tax Act purposes.

"In view of the small amounts involved, and since it may reasonably be contended in many cases that such items constitute excludable gifts, it is similarly held that the value of such an item of merchandise need not be treated as taxable income by the employees who receive it.

"The foregoing rules will not apply to distributions of cash, gift certificates, and similar items of readily convertible cash value, regardless of the amount involved."

While this latter ruling was promulgated four years after the controversy with which we are concerned here arose, it is persuasive, it seems to me, as to the attitude of the Department in the interpretation to be placed upon Christmas gifts or pure gratuities.

The Government's position is that the Special Gift Certificates involved here clearly come within the last paragraph of the last-quoted section, i. e., excluding "distributions of cash, gift certificates, and similar items of readily convertible cash value". I am unable to agree with the Government's interpretation of this paragraph as it applies to the Special Gift

Certificates with which we are here concerned.

The section means just what it says—*cash* or anything that is readily convertible to *cash*. These Special Gift Certificates clearly are not redeemable in cash. No other reasonable interpretation can be placed upon the Gift Certificates except that they are redeemable in merchandise.

The participating store must endorse the certificate in order to receive the credit for the amount specified in the gift certificate. Such endorsement provides:

> "We have honored this bond in payment for merchandise selected in our store."

This limits the provisions of the gift certificates to redemption in merchandise so far as the donor of the certificate is concerned.

It may be argued that the endorser may have actually paid the cash to the bearer of the gift certificate so far as knowledge of the donor is concerned, but the clear answer to this is that the endorsement by the participating store limits his right to receive credit for merchandise.

Further, it is scarcely likely that such participating merchant would deliver cash for such certificate, when to deliver merchandise would result in a profit or benefit to the participating store.

In Section 102 of the Internal Revenue Code of 1954, 26 U.S.C. § 102, the Congressional intent was clearly present when it excluded gifts from gross income. Section 102(a) provides:

> "*General Rule.*—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

The question of intent was discussed in Commissioner of Internal Revenue v. Duberstein et al., 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218. There the Court said [l. c. 285, 80 S.Ct. l. c. 1197]:

> "A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' * * * 'out of affection, respect, admiration, charity or like impulses.' * * * And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's intention. * * * 'What controls is the intention with which payment, however voluntary, has been made.' "

Under the evidence in this case there cannot be the slightest doubt, in the opinion of the court, as to the intention of the plaintiff that the amounts provided for in the gift certificates were not intended as wages. They were intended to be gifts and gratuities, and in no wise to be considered as any part of the compensation to its employees.

It is suggested that the plan is not a general one because the salesmen are not included. Invitations were not generally issued to the salesmen to the Christmas parties before they were abandoned. The evidence shows that if such salesmen were in the area, they were welcome, but otherwise they received no invitation.

The next question is, were the gift certificates in such amounts that they were of "relatively small value". I think the answer is clearly "yes". In this age of high prices of things from pins to platinum, $15.00 or $25.00 certainly is of relatively small value considering its relationship to the earnings of ordinary skilled and some highly skilled employees over a period of a year. The Gift Certificates are no more than sufficient to buy a pair of shoes.

Considering all the facts as the court has determined them to be, and the clear intention of the donor of the gift certificates, I think they were gifts and given merely as a means of promoting good will and contentment among its employees.

IT IS THEREFORE my conclusion that the amounts provided in such gift certificates were not wages and were not subject to the withholding tax which the defendant imposed upon them.