Madyo A. POLETTI and Marian Poletti, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17400.

United States Court of Appeals Eighth Circuit.

April 23, 1964.

Edward H. Tenney, Jr., St. Louis, Mo., Tenney, Dahman & Mathewson, St. Louis, Mo., on the brief, for petitioner.

Carolyn R. Just, Attorney, Tax Division, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Lee A. Jackson, Harry Baum and J. Edward Shillingburg, Attorneys, Dept. of Justice, Washington, D. C., on the brief, for respondent.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This is a petition for review of an unreported decision of the Tax Court disallowing income tax deductions for various types of business expense alleged to have been incurred in the operation of employment agencies located principally in St. Louis, Missouri.

Petitioners Madyo A. Poletti[1] and Marian Poletti, husband and wife, filed joint returns for the years 1955, 1956 and 1957.[2]

During the above years under review, the taxpayer operated several employment agencies in St. Louis, Missouri, and one in Los Angeles, California, acquired in 1957. In December of 1954, the taxpayer discontinued an agency previously operated in Chicago, Illinois, entering into an arrangement with the Cardinal Agency in Chicago for an exchange of male job applicants, dividing equally the fees derived from their placement. This arrangement lasted until sometime in 1956. During the period under review, taxpayer was also a partner in a concern known as the Reserve Office Force Company in St. Louis, which furnished its own employees to others as temporary office help.

The questioned expenditures arising from all these operations fall into three general categories: (1) a so-called "give-away" program consisting in gifts to job applicants; employers whose patronage afforded job placements of the applicants; and taxpayer's own employees on special occasions; (2) entertainment of employers and taxpayer's own key personnel; and (3) travel expenses incurred by taxpayer and his former wife. The deductibility of these expenses is governed primarily by § 162(a) of the Internal Revenue Code of 1954.[3]

The "give-aways" bought by taxpayer in large quantities consisted mostly of distressed merchandise and closeout items procured off season, which included costume jewelry, wrist watches, billfolds, cigarette lighters and all kinds of wearing apparel. The articles ranged in average purchase price from a few cents to

1. The business was that of Madyo A. Poletti, hereinafter referred to as "taxpayer".

2. The seven years 1951 through 1957 were involved in the Tax Court hearing, but no review was sought for the years 1951 to 1953, inclusive, and the amount in controversy for the year 1954 was small and review for that year abandoned.

3. "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *."

as much, in a few instances, as $100.00 for the most expensive gifts.

The taxpayer's "give-away" program was systematically pursued. On occasions he advertised in local newspapers that applicants calling at one of his offices would receive a free gift. It was his practice to give such an applicant an inexpensive gift upon interview and another upon placement. He would also entertain his customer-employers with whom he did business with dinners and at office parties, often presenting them with gifts at the latter occasions. He remembered the birthdays and anniversaries of employees on his own staff with a nominally priced gift. On special occasions, especially at Christmastime, his most productive key personnel, as well as employers with whom he placed the most job applicants, were rewarded with the more expensive gifts. It was also taxpayer's weekly custom to entertain his key personnel in St. Louis at a luncheon where business problems were the topic of discussion. He frequently invited representatives of employers to dinner at which the conversation centered around business. It goes without saying that taxpayer was an ambitious businessman who lived and breathed his work.

Due to a severe heart condition, the taxpayer was advised not to testify by his physician. However, the taxpayer's chief office employees took the stand in his behalf. One of these witnesses produced some 8,728 cancelled checks as corroboration of the expenditures for which petitioner claimed deductions. There is no question that taxpayer expended large sums categorized as "give-aways", travel and entertainment, but the dispute arises as to the deductibility of the expenditures within the meaning of § 162(a).

Finding originally that the taxpayer "failed and refused to substantiate any portion of the claimed deductions" or proved such expenses as "ordinary and necessary", the Commissioner applied the rule in Cohan v. Commissioner, 39 F. 2d 540 (2nd Cir. 1930), allowing deductions thereunder for the three years involved in the following amounts: 1955—$4,000.00; 1956—$7,500.00; and 1957—$10,000.00. Some of the expenditures were stipulated upon trial as deductible, but only in the year 1956 did the stipulated deductions exceed the original allowance made by the respondent under the Cohan rule. As the pattern of expenditures and law applicable thereto are the same for all the years in issue, we will focus our attention to 1956 which affords the clearest picture of the questions before us. The Tax Court in holding that the Cohan rule was applicable nevertheless allowed only the original amounts approved by respondent for the years 1955 and 1957 and only the excess amount of $70.29 stipulated as deductible for the year 1956. Despite the finding that at least a portion of the other expenditures made in 1956 was undoubtedly deductible, the Tax Court ruled there was no basis established by taxpayer's proof upon which to make an approximation of the deduction.

The record shows a great number of expenditures at St. Louis hotels for entertainment purposes in 1956 for which no allowance was made. Yet the Tax Court said in its opinion on page 14:

"Examining the evidence relating to petitioner's entertainment at the St. Louis hotels in the light of what was said in Challenge Manufacturing Co.,[4] * * * it is our opinion that some portion of petitioner's expenditures therefor during the years in issue constituted deductible business expenses, but the record fails to provide a basis for determining any specific amount therefor."

Simply stated, the issue is whether the Tax Court erred in failing to apply the Cohan rule to expenditures over and above those stipulated and allowed as deductible, even though finding that a portion thereof constituted deductible business expenses. We believe the Tax Court fell into error in this regard.

4. Challenge Mfg. Co., 37 T.C. 650 (1962).

After persistent urging by the Tax Court, the parties subsequent to trial submitted what is referred to as an Amended Stipulation of Facts. In this stipulation, respondent agreed that a list of items totaling $7,570.29 for the year 1956 was properly deductible which amount exceeded by $70.29 the sum previously allowed taxpayer by the Commissioner under the Cohan rule. In addition to the stipulated deductible items, the Amended Stipulation also contained two separate schedules of expenditures. One schedule was of "give-away" items which agreed these items had been distributed to employers, customers and taxpayer's own employees, but did not concede their deductibility. The other schedule reflected the remaining expenditures made by taxpayer and deducted by petitioners in their tax returns. The Tax Court accepted all facts contained in the Amended Stipulation as its findings. The Tax Court allowed the additional $70.29 deduction conceded in the Amended Stipulation, but despite its conclusion that the case was governed by the rule in Cohan, failed to apply the doctrine to some portion of expenditures concededly deductible.

Respondent's authorities do not afford us with support for affirming the refusal of the Tax Court to apply the Cohan rule to any of the balance of allowable expenditures for 1956 over and above the stipulated deductions. To the contrary in the Cohan case, Judge Learned Hand pointed out the paradox in acknowledging the existence of a legitimate expenditure but ignoring the right to any deduction therefor, "But to allow nothing at all appears to us inconsistent with saying that something was spent." Cohan v. Commissioner, supra at 544 of 39 F.2d. All of the authorities cited by respondent profess to adhere to the philosophy of Cohan which permits allowance for a reasonable amount of deductions upon general proof some allowable expenditures were made.

This is precisely the situation which confronted the Tax Court when it found that the taxpayer had proven some allowable expenditures in excess of the stipulated amounts for 1956 but awarded him no credit for a reasonable part thereof. The only distinction in Cohan and the instant case is that in the former there were no records of expenses but merely estimates of expenditures for entertainment and travel, while here there is a record of the travel, entertainment, and money spent therefor. Thus, approximation of the deductible allowance for expenses incurred within the standards of Cohan was more realistically possible.

■ Prerequisite to approximation of a reasonable deduction is the basic question of which expenses were ordinarily and necessarily incurred by the taxpayer in the course of his business. Employment agencies engaged in extensive advertising. The fruits of effective advertising are reaped in job offers from employers and available applicants to fill the jobs. The taxpayer's efforts to promote his business by the nominal "give-aways" to job applicants and the personal contacts with and entertainment of the employers in order to obtain job offers from them were really nothing more than a form of promotional advertising to advance his business. Although respondent stipulated as to the deductibility of some of such expenditures, it denied some similar expenditures and suggests on appeal that there was no evidence in the record that conditions in the employment industry were such that gifts were necessary for the taxpayer to obtain business. Although one of the witnesses testified that promotion was vital to success in such business, respondent's proof on this point consisted in chief of the testimony of two of taxpayer's competitors who stated they did not utilize the "give-away" type of promotion, nor was it custom among other employment agencies in the St. Louis area. Both competitors relied heavily on newspaper advertising and direct mail campaigns for business promotion. It is singular to note that these witnesses made no claim to attracting larger accounts, whereas the larger accounts were avidly courted by the taxpayer. He persistently entertained them.

Each one of his agency officers furnished a list annually designating the employers who furnished the most job offers. The more expensive gifts went to this group. The evidence reflects that the taxpayer experimented on his agencies with his promotional efforts. He found that the offices which engaged in such promotional activities were the ones that did the most business. It is unquestioned that taxpayer's promotional efforts increased his business during the tax years in issue.

While success of a business promotion scheme is not a conclusive test of ordinary and necessary business expense, on the other hand, one should not be penalized taxwise for his business ingenuity in utilizing advertising techniques which do not conform to the practices of one whom he is naturally trying to surpass in profits. It would be a hard rule, not in keeping with our free enterprise system, which in effect forbade a businessman from employing nonconventional advertising methods because resultant expenses were non-deductible. Certainly, Congress did not intend § 162 (a) to have the effect of confining business advertising and promotion to the stereotyped pattern that might be set by unimaginative competitors in the taxpayer's business locale. In Duffy v. Lethert, 63–1 U. S. Tax Cas. ¶9442 (D. Minn.1963), relied upon by respondent, the district court stated on pages 88–194 of the reported opinion:

"Some discretion must be left to the taxpayer in deciding what kinds of advertising and promotion are necessary to obtain and hold business."

More importantly, when the court undertakes to define and segregate the definitions of "ordinary" and "necessary" expense as applied to a particular alleged business expenditure, difficulty is inevitably encountered. This usually vexatious problem of defining "ordinary" and "necessary" as applied to a particular, alleged, business expenditure, however, has been resolved satisfactorily for our needs in the case at bar in Blackmer v. Commissioner, 70 F.2d 255, 92 A.L.R. 982 (2nd Cir. 1934). The Second Circuit there acknowledged the propriety of awarding gifts and entertainment as business inducements in holding "ordinary and necessary" the expenses incurred by a professional actor who furthered his career by bestowing gifts and extensive entertainment upon practically all persons with whom his talent brought him into contact. The court there ruled:

"His entertainment was reasonably connected with his profession. It tended to promote his popularity and thereby to increase his income from that business. The expenses were therefore ordinary and necessary expenses." Blackmer v. Commissioner, supra at 257 of 70 F.2d.

Furthermore, the distribution of presents to employees at Christmastime and on other special occasions is a common practice permitted within certain reasonable limits by Revenue Rulings.[5]

5. 1959 Rev.Rul., 59–58, C.B. 59–1, p. 17:
"Advice has been requested whether the value of a turkey, ham, or other item of merchandise purchased by an employer and distributed generally to each of the employees engaged in his business at Christmas, or a comparable holiday, constitutes wages subject to income tax withholding or income subject to tax for income tax purposes, and whether the cost of such items is deductible by the employer as an ordinary and necessary business expense.
"Section 31.3401(a)–1(b) (10) of the Withholding Tax Regulations provides that, ordinarily, facilities or privileges (such as entertainment, medical services, or so-called 'courtesy' discounts on purchases), furnished by an employer to his employees generally, are not considered as wages subject to withholding if such facilities or privileges are of relatively small value and are furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiency of his employees. Similar provisions are contained in the regulations pertaining to the employment taxes imposed by the Federal Insurance Contributions Act and the Federal Unemployment Tax Act (Chapters 21 and 23 of the Internal Revenue Code of 1954). See

■ The Tax Court could apply the aforecited revenue ruling, footnote 5 supra, used as a yardstick by the court in Hallmark Cards, Inc. v. United States, 200 F.Supp. 847 (W.D.Mo.1961) in finding $25.00 gift certificates were of "relatively small value". If the Tax Court is of the opinion that the taxpayer here had been too generous at times with his gifts to his employees, a reasonable portion thereof is nonetheless deductible pursuant to these Internal Revenue directives.

The Tax Court primarily rested its denial of taxpayer's deductions for entertainment expense exclusive of the "giveaway" program on its opinion in Challenge Mfg. Co., supra. Careful study of that decision reveals a pronounced dissimilarity in its facts and those of the instant case. The principal entertainment expense in the Challenge case involved the operation of a luxurious yacht and two smaller boats owned by the corporate petitioner, a manufacturer of mobile concrete mixers, but in the exclusive possession of an individual, the sole stockholder of the corporation, who used the vessels almost entirely for his own family's personal pleasure. The exclusive distribution, advertising and promotion of the corporate taxpayer's principal product was handled by another company. Nevertheless, the corporation was allowed to deduct fifty per cent of the maintenance, depreciation and entertainment expenses even though there was no proof that on the few occasions when guests aboard the yacht had a business connection with the corporate petitioner, their presence on these occasions had any proximate relation to the corporate petitioner's business.

A sharp contrast appears when the present taxpayer's expense in the entertainment of employers to obtain job placements necessary for the profitable operation of his business is placed alongside the entertainment expense for which deduction was sought and half of which was allowed in the situation posed by the Challenge case.

■ There, the individual petitioner, accompanied by his wife, made numerous trips to popular vacationlands with no proof that the wife's presence had any bona fide business purpose.[6] Here, the taxpayer's wife who accompanied him to California on one occasion assisted him in opening an employment agency and while there worked full time in the agency's office. In short, there was no convincing proof that any of the entertainment in Challenge was done for any reason other than social, while the opposite is the proof in several instances in the case at hand.

■ We find it necessary to remand because the Tax Court did not apply the Cohan rule to that balance of the admittedly allowable expenditures over and above the stipulated amounts for the year 1956.[7] We are not, however, prejudging

---

sections 31.3121(a)–1(f) and 31.3306(b)–1(f) of such regulations.

\* \* \* \* \*

"It is further held that the cost to the employer of turkeys, hams, and other merchandise of similar nominal value which are distributed generally to the employees engaged in his business, primarily for the business purpose of promoting good relations with his employees, is deductible by the employer under section 162 of the Code as an ordinary and necessary business expense."

6. Treasury Regulations on Income Tax (1954 Code), 26 C.F.R. § 1.162–2:

"*Traveling expenses*

\* \* \* \* \*

"(c) Where a taxpayer's wife accompanies him on a business trip, expenses attributable to her travel are not deductible unless it can be adequately shown that the wife's presence on the trip has a bona fide business purpose. The wife's performance of some incidental service does not cause her expenses to qualify as deductible business expenses. The same rules apply to any other members of the taxpayer's family who accompany him on such a trip."

7. Taxpayer in his 1956 return claimed deductible expenditures of the type here involved amounting to $27,360.07. He "established" $25,862.77 in expenditures for such purposes. The Commissioner allowed initially a deduction of $7,500.00. At the trial, the Commissioner conceded that $7,570.29 was deductible as an expense for 1956 and such is the amount

its future findings in requiring that application of the rule would necessarily, in other years at issue, demand additional deductions other than the amounts already allowed by respondent. The Tax Court is the trier of the facts and could conceivably, depending on the evidence at retrial, find a different amount than allowed initially as deductible for the years 1955 and 1957. The burden still remains upon the taxpayer to prove the connectivity of business purpose to establish his right to the claimed, deductible expenditures. The Cohan rule must be applied, however, to expenditures over and above those stipulated as deductible if the court finds, as it did here, that the taxpayer sustained his burden of proof with respect to the deductible nature of some of these expenditures.

Reversed and remanded for further proceedings consistent with this decision.

of the deduction allowed by the Tax Court. No allowance was made for any deduction with respect to the remaining established expenditures aggregating

$18,292.48, at least some of which undoubtedly constituted ordinary and necessary business expense.