LOVE BOX COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Love Box Co. v. Commissioner
Docket No. 3641-82.
United States Tax Court
T.C. Memo 1985-13; 1985 Tax Ct. Memo LEXIS 618; 49 T.C.M. (CCH) 479; T.C.M. (RIA) 85013; January 9, 1985. Marvin J. Martin and David E. Hill, for the petitioner. David G. Hendricks, for the respondent. COHEN MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Deficiency
1976
$21,947
1978
14,099
1979
6,208
The issue to be determined is whether petitioner's expenditures for seminars attended by certain employees and customers of petitioner and by other members of the public are deductible under section 162(a). [1]
FINDINGS OF FACT Love Box Company, *619 Inc. (petitioner) is a Kansas corporation whose home office and principal place of business is in Wichita, Kansas. Petitioner filed Forms 1120, U.S. Corporation Income Tax Returns, for its taxable years ended September 30, 1976, September 30, 1978, and September 30, 1979, with the Internal Revenue Service Center in Austin, Texas. Petitioner filed Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year ended September 30, 1976, with the Internal Revenue Service Center in Austin, Texas. Some of the facts have been stipulated, and the stipulation and attached exhibits are incorporated herein by this reference. After concessions the only issue remaining in dispute is the deductibility of expenditures in the amounts of $8,949.91 and $9,545.01 during the fiscal years ended in 1978 and 1979, respectively, for seminars conducted by Robert LeFevre. Petitioner was founded in 1923 by Walter L. Love, now deceased, the father of petitioner's current president and chief executive officer, Robert D. Love. During petitioner's fiscal years 1978 and 1979, Robert D. Love and other members of the Love family owned all of the outstanding stock of petitioner. During *620 the fiscal years 1978 and 1979, petitioner's principal operations consisted of the manufacture and sale of box, fiberboard and wood products from facilities in Wichita, Kansas, Oklahoma City, Oklahoma, Plummer's Landing, Kentucky, Lewisburg, Ohio, and Fayetteville, Arkansas. Petitioner was also engaged in agricultural and farming operations in Kansas and real estate operations in Scottsdale, Arizona. From 1956 through 1978, petitioner's total sales rose from $2,532,467 to $18,971,323. Sales in the fiscal year 1979 were $24,039,885. From 1956 through 1978, the number of persons employed by petitioner rose from 45 to 600. As of the time of trial, petitioner was receiving purchase orders from 10,000 or 15,000 customers. Robert D. Love maintained and advocated various views on economic, financial, social, and other subjects of a general nature, which included commitment to individual freedom and responsibility, free enterprise, fair dealing, excellence and quality of work in products and services, hard work, thrift, self-reliance, honesty and truthfulness, and integrity. These viewpoints espoused by Robert D. Love will hereinafter be referred to for convenience as the *621 "Love philosophical perspective." The same or comparable viewpoints were adopted by various employees and customers of petitioner and were consistently encouraged in petitioner's day-to-day operations as well as in petitioner's advertising and other public communications. The Love philosophical perspective was also presented in a series of seminars sponsored by petitioner, including two 5-day seminars presented by Robert LeFevre during 1978 and 1979. The expenses in issue in this case were incurred for presentation of those seminars. The LeFevre seminars were open to the public on a word-of-mouth basis, and attendance was not restricted to any group or classification of persons. Registration for the 1978 and 1979 seminars was limited to 35 persons. Of the 35 individuals attending the 1978 seminar, 10 were employees of petitioner. Of the 28 individuals attending the 1979 seminar, 6 were employees of petitioner. Attendance by employees awa voluntary, and they were given time off from their jobs to attend without any reduction in pay. Nonemployee attendees at the 1978 and 1979 seminars included employees of petitioner's suppliers, customers, and other business and personal acquaintances *622 of petitioner's managerial employees, including Robert D. Love, and of petitioner's customers. Nonemployee seminar attendees were asked to make a contribution in the amount of $200 to Wichita Collegiate School, a tax-exempt school. Robert D. Love was a principal founder of Wichita Collegiate School and served as its chairman of the board from its inception around 1959 through the years in issue and to the time of trial. Contributions received by the school from seminar participants totaled $2,900 in 1978 and $2,800 in 1979. ULTIMATE FINDING OF FACT The expenses of sponsoring the LeFevre seminars in 1978 and 1979 were not ordinary and necessary business expenses of petitioner. OPINION Petitioner contends that the expenses of presenting the LeFevre seminars are deductible under section 162(a) as educational expenses for employees and/or institutional or "good will" advertising expenses of petitioner. Respondent disputes petitioner's characterization of the expenses as ordinary and necessary educational expense or advertising expense and contends that the expenses are either personal expenses of Robert D. Love for the advocacy of his own personal philosophy or are *623 lobbying expenses declared nondeductible by section 1.162-20, Income Tax Regs.
Petitioner has the burden of proving that it is entitled to deductions specifically authorized by Congress. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure. Deductibility under section 162(a) is dependent upon the taxpayer's establishing that an expense is "normal, usual or customary" in the taxpayer's trade or business and reasonable in relation to its purpose. Deputy v. du Pont,308 U.S. 488, 495 (1940); United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967); Boser v. Commissioner,77 T.C. 1124, 1132-1133 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983). As we said in Carroll v. Commissioner,51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969): "There are many expenses which are helpful, even essential, to one's business activities, but which are not deductible in our tax system." 51 T.C. at 215. Thus, "before *624 expenses will be considered ordinary and necessary under section 162, it must be established that they bear a proximate and direct relationship to the taxpayer's trade or business." There must be a showing of a "direct and substantial relationship" and not merely a tenuous one between educational expenses of an employee and skills required in his employment before such expenses may be deducted. 51 T.C. at 218. [2] In Schwartz v. Commissioner,69 T.C. 877, 889 (1978), we referred to the taxpayer's burden of proof as that which would "justify our concluding that there was a sufficient nexus between the educational expenditures and petitioner's *625 trade or business." As respondent concedes, it is doubtful that any business person would take exception to espousal of the qualities of individual freedom, responsibility, self-reliance, fair dealing, dependability, service, hard work, thrift, honesty, truthfulness, and integrity -- those qualities central to the Love philosophical prospective. Thus, it is not surprising that the testimony of witnesses for petitioner that the seminars were helpful to the participants is uncontradicted. It is also apparent, however, as admitted by those witnesses, that such qualities are useful outside of the business context and in their personal lives. On the other hand, the fact that a corporate activity is consistent with the personal philosophy of its president cannot, standing alone, disqualify the expenses of that activity from deductibility, because business management philosophy can seldom, if ever, be totally isolated from personal convictions. The focus, therefore, must be on the primary purpose of the expenditures in question as it may be inferred from the totality of facts concerning the benefits to be achieved, the direct relationship of those benefits to petitioner's business, *626 and the reasonableness of the expenses.On the basis of the entire record in this case, we conclude that petitioner has not established that the expenses were normal, usual, customary, or reasonable or that they had the necessary proximate relationship to petitioner's business. In support of its claims that it has established a direct relationship between the LeFevre seminars and maintaining or improving job-related skills, petitioner cites testimony of salesman Thomas Hildy, an employee of Sooner Box Company, a wholly owned subsidiary or petitioner. That testimony, in response to leading questions of petitioner's counsel, was as follows: Q. Did you feel that the LeFevre seminar helped you in your skills in this area of being self reliant, having responsibility on your own? A. Yes. It further defined what was stated when I was hired, that you're on your own, basically. Be an honest person, do the best job you can, work hard, and the success will come. We're here to back you up to the fullest extent necessary that you ask for. Q. What about these other attitudes you've heard discussed here like excellence, hard work, honesty, truthfulness, free enterprise, benefits *627 of a voluntary marketplace, were all those discussed at the LeFevre seminar? A. Yes, they were. * * * Q. Do you feel like that LeFevre seminar in all those areas was helpful to you in addressing those skills? A. Yes. Q. Do you think you need those skills to succeed and rise up in Love Box Company. A. I would think you'd need those skills to be successful in any endeavor. Q. But all companies don't allow you those freedoms, is that right? A. That's right. That's right. [3] We agree with petitioner that Hildy's testimony is representative, but we disagree with petitioner's argument as to the weight to be given to it. Hildy testified only that he was a salesman and that he was given "substantial responsibility and freedom to go out to sell a box." He did not identify any specialized skills that were required of him, and he in no way distinguished the benefits of the LeFevre seminar to his work from the benefits that might have assisted an employee in any capacity in any company. *628 As evidence that the LeFevre seminars "improved specific job related skills required by petitioner's employees," petitioner cites testimony no more specific than the following testimony of the president of one of petitioner's customers: Q. Do you believe that these seminars of LeFevre tend to improve the skills of employees that are necessary for the jobs that they're doing, that you've heard discussed here this morning? And let me take you back to 1978 and 1979, those two years of the seminars. A. I certainly would. I think that people who feel good about themselves are more productive people. And all businesses, in the final analysis, are people business. You do everything you can to get your employees to feel good about themselves and have a good sense of direction. When you do that, you have vastly better and more productive employees. * * * A. I think employees who feel good about themselves are more productive and better employees. And, yes, I think people who attend this kind of a seminar, it helps them to get a broad picture, a philosophical outlet, direction, and yes, I think that helps them a lot. To say that the Love philosophical perspective *629 was useful in the performance of the individual's duties is no more compelling than to say that good health or general undergraduate education in the liberal arts is useful. The expenses of such general education programs are not deductible by individuals because the necessary direct and proximate relationship between such courses and job skills cannot usually be shown to exist. See Carroll v. Commissioner,supra;Krist v. Commissioner,483 F.2d 1345 (2d Cir. 1973), revg. a Memorandum Opinion of this Court. While some employers may reimburse their employees for the cost of general education, such reimbursement is allowed as a deduction to the corporation, if at all, on the theory that it is compensation to the individuals. See, e.g., Anaheim Paper Mill Supplies, Inc. v. Commissioner,T.C. Memo. 1978-86; Morgan v. Commissioner,T.C. Memo. 1980-505. Petitioner has not contended and has not shown that the cost of the education was intended as compensation to the employees in this instance. In any event, we are not persuaded that the expenditures in question were reasonable expenditures for education of a general *630 nature provided for a total of only 16 of petitioner's 600 employees. The same educational messages could have been conveyed to a larger group of petitioner's employees for the same or comparable costs if they were "necessary" in the sense of section 162(a). See Boser v. Commissioner,77 T.C. 1124, 1133 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983). The relationship between the nonemployee attendees of the seminars and the business of the company is similarly too tenuous to support a deduction for advertising expense. Section 1.162-20(a)(2), Income Tax Regs., provides as follows: (2) Institutional or "good will" advertising. Expenditures for institutional or "good will" advertising which keeps the taxpayer's name before the public are generally deductible as ordinary and necessary business expenses provided the expenditures are related to the patronage the taxpayer might reasonabley expect in the future. For example, a deduction will ordinarily be allowed for the cost of advertising which keeps the taxpayer's name before the public in connection with encouraging contributions to such organizations as the Red Cross, the purchase *631 of United States Savings Bonds, or participation in similar causes. In like fashion, expenditures for advertising which presents views on economic, financial, social, or other subjects of a general nature, but which does not involve any of the activities specified in paragraph (b) or (c) of this section for which a deduction is not allowable, are deductible if they otherwise meet the requirements of the regulations under section 162. Petitioner has not adequately shown, however, that the sponsoring of the seminars kept the taxpayer's name before the public or that the expenditures were related to the patronage the taxpayer might reasonably expect in the future. The manner of publicizing the seminars and the number of attendees weas far too limited to be considered as affecting "the public" in any reasonably use of the word. Moreover, petitioner presented no evidence that the decision of any customer or prospective customer to use or not to use petitioner's product was influenced by the seminars. Notwithstanding the subjective opinions of the value of the Love philosophical perspective to petitioner's business testified to by Robert D. Love and other witnesses, any *632 increase in petitioner's business may have been totally coincidental with an unrelated to the seminars. The testimony did not isolate the seminars as a factor apart from the comprehensive advertising program of the company conducted by more usual and customary means. The relationship between the seminars and the personal interests of Robert D. Love, however, is obviously more than coincidental. The generalized and self-serving testimony of petitioner's witnesses with respect to the benefits to be derived from the seminars cannot, therefore, carry petitioner's burden of proof, regardless of the failure or inability of respondent to contradict their assertions. We have examined the other arguments made and authnorities cited by the parties and find them unpersuasive. While the cases cited by the respective parties may stand generally for the propositions that they are cited for in the briefs, each of them is factually distinguishable. This case must e decided on its particular facts, and on that basis we conclude that petitioner has not sustained its burden of proving that the expenses of the LeFevre seminars were ordinary and necessary expenses of petitioner's business. *633 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Carroll v. Commissioner,51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969), as well as other authorities cited by both parties and relied upon herein, concerned the deductibility of expenses incurred by an individual for his own education. Similar considerations should apply in the present case where the issue is the deductibility of expenditures incurred by an employer. Cf. Anaheim Paper Mill Supplies, Inc. v. Commissioner,T.C. Memo. 1978-86↩.
3. Petitioner similarly relies on equally uncontrovertible but noncompelling testimony of Robert D. Love as follows: Q. Do you think they're ordinary and necessary expenses for you, for your company? A. I have always felt that they were a part of the training just the same as the technical training to teach a man the different kinds of flutes, the different grades of paper, the different kinds of printing, the different kinds of inks. He also has to have a philosophical position about his work. That if he was just going to come 8:00 to 5:00 and that's all we got from him, I wasn't interested.We had to have somebody who was with us spiritually, mentally, and physically. * * * Q. And that the LeFevre seminars had a similar defense mode, is that correct, Sir? A. Educational, defense, whatever, we wanted our employees to be constantly educated as to what they could do in their work-a-day life in our factory to constantly promote the idea of freedom, creativeness, individual responsibility, so that when you're running around with a myriad of problems and a myriad of customers, they could make as many decisions as they possibly could at the level they were at. That's called keeping down the transaction costs. If you have to call up New York, which a lot of our competitors do, to get a price for a corrugated box, we beat their ears off in the process by being able to do it right in the man's office at the time. * * * Q. In your opinion, did that help to develop skills that your employees need in doing the best job for your company as you operate? A. Absolutely. In 1947 I called on Mr. Wilkins at the Ark City Flour Mills which made an indelible impression on me, and I walked in his office and he asked me to quote him a price on corrugated boxes, and my practice up to that point had been to either call back to the factory to some degree, or many people would let me call on them, but then when I'd leave their office they'd call my father and give him the order. So I had to learn to live with that. But Mr. Wilkins was testing me, I'm sure. He said he had never bought from us, we have never sold him a thing.He said, I want a price on a box and you're not going to call your office, you're on your own. So I gave him a price.He gave me an order. I found out that the price was almost the same as what he [was] paying. He was very impressed. Well, that concept of freedom I wanted for every salesman that we would ever have, for him to be able to have enough knowledge, enough confidence in himself, that when he went out he would be able to quote that customer on the spot. There's nothing worse in business than having some salesman call on you, first of all, that doesn't know his product, has no authority, and can't make a decision. And I wanted our people, because of this philosophy of individual freedom and the idea that you can't control another human being, to be out there and to be able to know our product and our company well enough that they could make those decisions on the spot. And it has paid off tremendously.↩