**LOVE BOX COMPANY, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 85–1804.

United States Court of Appeals, Tenth Circuit.

March 28, 1988.

Marvin J. Martin (Donald E. Hill, with him on the brief), Martin, Churchill, Overman, Hill & Cole, Chartered, Wichita, Kan., for appellant.

Bruce R. Ellisen, Atty., Tax Div. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Richard Farber, Attys., Tax Div., with him on the brief), Dept. of Justice, Washington, D.C., for appellee.

Before McKAY, McWILLIAMS, and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

The issue before the court is whether the costs a company incurred in sponsoring seminars by a well-known free enterprise advocate are deductible expenses under the Internal Revenue Code of 1954 (I.R.C.).[1]

Love Box Company, Inc. (Company) is a Kansas corporation which manufactures and sells boxes and other fiberboard and wood products. The Company operates facilities located in Kansas, Oklahoma, Kentucky, Ohio and Arkansas. The Company is also engaged in agricultural operations in Kansas and in real estate enterprises in Arizona. Over the years, the Company has developed a strong corporate philosophy concerning economics, finances, societal interests, and other subjects of a general nature. This philosophy manifests itself in a commitment to such things as individual freedom and responsibility, free enterprise, excellence and quality in products and service, honesty, truthfulness, hard work and integrity.

The Company has actively sought to project its philosophical perspective to its employees and customers by arranging public speeches and seminars. For many years the Company has sponsored seminars by well-known scholars. The stated purpose behind these seminars was to educate Company employees and to advertise the Company's perspective to the public. In

---

1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended, and in effect for the years 1978 and 1979, the years in issue.

1978 and 1979, the Company sponsored two intensive, five-day seminars featuring Mr. Robert LaFevre. The seminars were limited to thirty-five participants, and employees were given first priority to attend. Attendance was voluntary, and any of the Company's employees who desired to attend were given time off work without a reduction in pay. Of approximately 600 employees, 10 attended the 1978 seminar and 7 attended the 1979 seminar. Record, exh. 9 and 10. The remaining attendees for both years included two customers, two prospective customers, other business representatives, and individuals from the general public.

In presenting the 1978 and 1979 seminars, the Company incurred expenses of $8,949.91 and $9,545.01 respectively. The primary costs were the speaking fees, room, and meals of Mr. LaFevre. Record, vol. 1, doc. 10, at 3. The Company deducted these costs as part of their "Public Promotion" expenses. Upon audit, the Commissioner determined that these expenses were not deductible because they were not ordinary and necessary business expenses under I.R.C. § 162. *Id.*, vol. 1, doc. 11, at 11–12.

The Company filed a petition with the Tax Court seeking a redetermination of the deficiencies assessed by the Commissioner. The Tax Court found that no proximate relationship existed between the seminars and the job skills of the Company employees. Therefore, the seminar expenses were not deductible as educational expenditures which maintained or improved job skills. *See* Treas. Reg. § 1.162–5 (as amended in 1967). The Tax Court also found that the relationship between the nonemployee attendees and the Company was too tenuous to justify the Company's claim that the expenses could alternatively be deducted as "good will" advertising. *See* Treas. Reg. § 1.162–20(a)(2) (as amended in 1969). Both rulings are before this court upon appeal.

Congress directed the United States Courts of Appeals to review tax court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482. Appellate courts ordinarily apply a "clearly erroneous" standard when presented with factual questions. *Commissioner v. Duberstein,* 363 U.S. 278, 289–91, 80 S.Ct. 1190, 1198–99, 4 L.Ed.2d 1218 (1960) (review of whether a transaction constitutes a gift under the I.R.C. raised a factual issue subject to "clearly erroneous" standard). A *de novo* standard of review is used when evaluating questions of law. *Helvering v. Tex–Penn Oil Co.,* 300 U.S. 481, 491, 57 S.Ct. 569, 573, 81 L.Ed. 755 (1936) (review of tax board decision was "a conclusion of law or at least ... mixed question of law and fact" and is subject to independent judicial review). However, the standard of review of mixed questions is not entirely established.[2] *See Pullman–Standard v. Swint,* 456 U.S. 273, 289–90 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982). The Circuit Courts of Appeals have applied both *de novo* and clearly erroneous review when deciding mixed questions of law and fact. *Id.* The Tenth Circuit has concluded that if "the mixed question involves primarily a factual inquiry, the clearly erroneous standard is appropriate. If, however, the mixed question primarily involves the consideration of legal principles, then a *de novo* review by the appellate court is appropriate." *Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir. 1986); *see United States v. McConney,* 728 F.2d 1195, 1200–04 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (a "clearly erroneous" standard is applied if the issue tends to be more factually based and concerns factors more appropriately decided by the trial court).

■ Since we must consider both the facts regarding the 1978 and 1979 seminars and the law as applied by section 162, this

---

**2.** The Supreme Court has defined mixed questions as those "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982).

case presents a mixed question of fact and law. Courts reviewing section 162 expenses have usually emphasized the factual characteristics surrounding the expenditures. The Supreme Court stated early on that "[w]hether an expenditure is directly related to a business and whether it is ordinary are doubtless pure questions of fact in most instances. Except where a question of law is unmistakably involved[,] a decision of the Board of Tax Appeals on these issues ... should not be reversed by the federal appellate courts." *Commissioner v. Heininger*, 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171 (1943) (footnote omitted); *see Welch v. Helvering*, 290 U.S. 111, 114–15, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) (payments to creditors not ordinary and necessary business expenses under the facts of that particular situation); *Glasgow v. Commissioner*, 486 F.2d 1045, 1046 (10th Cir.1973) (per curiam) (expenses of educational courses deducted under I.R.C. § 162(a) involved "essentially a question of fact"). To resolve the issues before us now, we must examine the characteristics and circumstances of the 1978 and 1979 LaFevre seminars and determine how these features link the seminars to the business purpose of the Company. Therefore, we regard these issues as primarily factual and will uphold the findings of the tax court unless the findings are clearly erroneous.

■ "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefore can any particular deduction be allowed." *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). Moreover, the taxpayer bears the burden of proving that his expenditures are deductible. *Welch v. Helvering*, 290 U.S. at 115, 54 S.Ct. at 9; *Medco Products Co. v. Commissioner*, 523 F.2d 137, 138 (10th Cir.1975).

Section 162 and its supporting regulations create a framework which allows deductions for various types of expenses, including certain educational and advertising expenses. The primary requirement for deductibility under section 162 is that the particular expense be an ordinary and necessary expense which bears a "proximate and direct relationship to the taxpayer's trade or business." *Carroll v. Commissioner*, 51 T.C. 213, 218 (1968), *aff'd*, 418 F.2d 91, 95 (7th Cir.1969). Thus, our examination of whether plaintiff's educational and advertising expenses come within section 162 deductibility focuses on whether the expenses bear a close enough relationship to the Company's business to say that they are ordinary and necessary.

■ The Company first claims that the LaFevre seminar expenses are deductible by the company as ordinary and necessary education expenses of its employees.[3] Education expenses satisfy the ordinary and necessary requirement of section 162 provided they meet the enumerated tests of Treasury Regulation 1.162–5. Rev.Rul. 76–71, 1976–1 C.B. 308, 310. Treasury regulation 1.162–5 sets forth a series of nonqualifying and qualifying tests. The first examination is to see if the educational expense is disqualified from deduction because it was incurred to (1) meet the minimum educational requirements of the trade or business or (2) qualify the taxpayer for a new trade or business. Treas.Reg. 1.162–5(b)(2) and (3). Provided the educational expenses are not disqualified from deduction, they must also satisfy the qualifying requirement of either (1) maintaining or improving job skills or (2) meeting the express requirements of the employer or the law for retention of employment. Treas. Reg. 1.162–5(a), (c)(1) and (c)(2). In satisfying the requirement of maintaining or improving skills required in his employment, it is insufficient that the educational ex-

3. We note at the outset that the education expense deduction is historically provided to an *individual* who makes expenditures to maintain or improve his job skills. Treas.Reg. § 1.162–5(a). When a corporation makes expenditures to help employees improve their job skills, the expenditures are more frequently de-

ducted under section 162 as ordinary and necessary expenses of doing business or as some form of compensation to the employee. Because the case law in this area is so fact-oriented and geared to individual taxpayers, the guidance provided by the application of previous decisions must primarily be by analogy.

penses merely improve general skills. To be deductible the expenses must improve skills that bear a "proximate and direct relationship to the taxpayer's trade or business." [4] *Carroll v. Commissioner*, 51 T.C. 213, 218 (1968), *aff'd*, 418 F.2d 91, 95 (7th Cir.1969); *see Anaheim Paper Mill Supplies, Inc. v. Commissioner*, 37 T.C.M. (CCH) 403 (1978) (although employer's expenses for employee's general college education were generally beneficial to the company, they were not deductible because there was no direct relationship between the skills required to operate the company's business and the courses taken); *see generally Smith v. Commissioner*, T.C. Memo 1981–149 (1981) (business classes were not proximately related to skills of section foreman in the quality control department); *McAuliffe v. Commissioner*, T.C.Memo 1980–189 (1980) (English classes increased defense attorney's general understanding and competency but did not proximately relate to the improvement of legal skills); *Baker v. Commissioner*, T.C. Memo 1971–279 (1971) (courses in geology, economics of transportation, etc. were not closely enough related to improve flight operations officer's job skills).

■ In the present case, the commissioner did not argue that the seminar expenses were nondeductible because they were disqualified, but rather because they did not meet one of the two qualifying tests. The Company did not contend that the seminar expenses were an express requirement as a condition to continued employment. In fact, the record reveals that attendance at the seminars was purely voluntary. Thus, in light of the above authority, the expenses for the LaFevre seminar would be deductible only if the Company could demonstrate that the seminars maintained or improved job skills in its employees that directly contributed to its trade and business. The Company gave testimony that the seminars promoted a philosophy based upon traits such as honesty, self-reliance, and dependability. Record, transcript, at 23–26, 84–85. However, the record does not indicate that participation in the seminars improved job performance in any measurable way or that the Company used seminar attendance to select employees for advancement. Rather, the Company's testimony reveals that the seminars emphasized broad attributes which would be beneficial in any line of work or personal endeavor. The evidence presented by the Company never bridged the gap from individual improvement to business improvement. The Company's testimony never established how the seminars maintained or improved job skills which were a direct and proximate benefit to the Company in the production and sale of wood and fiberboard products.

We do not deny that the teaching of individual freedom, responsibility, hard work, thrift, honesty, truthfulness, and integrity may have benefited the employees and thus benefited the Company; but rather we conclude that the seminar expenses are more analogous to general education expenses which are too tenuous to the specific job skills of the Company to qualify for deduction under section 162. In light of the evidence and our deferential standard in this case, the Tax Court's finding that the seminar expenses were too attenuated from the Company's business purpose to be deductible as ordinary and necessary education expenses was not clearly erroneous.

■ The Tax Court also ruled that the "relationship between the nonemployee attendees of the seminar and the business ... [was] too tenuous to support a deduc-

---

4. Prior to 1967, Treasury Regulation 1.162–5 required that educational expenses be undertaken with the primary purpose of maintaining or improving skills required in the taxpayer's trade or business. This primary purpose requirement was eliminated by an amendment to the regulation in 1967. Treas.Reg. 1.162–5 (as amended by T.D. 6918, 1967–1 C.B. 36); *see also Carroll v. Commissioner*, 418 F.2d at 91, 94–95. Although the improving of skills no longer has to be the primary purpose for the educational expenses, the skills improved must still bear a direct relationship to the taxpayer's trade or business. *Schwartz v. Commissioner*, 69 T.C. 877, 889 (1978) (taxpayer failed to prove "sufficient nexus" between expenses and skills of business); *McAuliffe v. Commissioner*, T.C. Memo 1980–89 (education deduction disallowed because expenses only tenuously related to job skills).

tion for advertising expenses." Treas.Reg. § 1.162–20(a)(2). Record, doc. 11, at 12. An advertising and promotional scheme may be deductible even though the methods are unusual or nonconventional. *Poletti v. Commissioner,* 330 F.2d 818, 822 (8th Cir.1964). However, "[t]he burden still remains upon the taxpayer to prove the connectivity of business purpose to establish his right to the claimed, deductible expenses." *Id.* at 824. If the cost relates to an activity more properly characterized as personal, the deduction cannot be allowed. *W.D. Gale, Inc. v. Commissioner,* 297 F.2d 270, 271 (6th Cir.1961) (maintaining and operating racing speedboats was for personal pleasure and not for business purpose).

The Company claims the seminar expenses bear a direct relationship to its publicity and to the patronage it might expect in the future, even though the seminars were only publicized by word-of-mouth and no evidence was produced to show that the seminars kept the Company's name before its advertising market. The 1978 and 1979 seminars were attended by only two of the Company's 10,000 to 15,000 customers, and by two potential customers. Record, exh. 9 and 10. The Company did produce as witnesses two of its current customers. Both customer-witnesses regarded the Company's philosophy as important because it represented an excellent "corporate culture" that was favorable to their business relationship. Record, transcript, at 88–89, 96–99. However, this testimony does not reveal that the seminars in any way influenced these witnesses to become customers. Indeed, one customer-witness testified upon cross-examination that he would attend such seminars regardless of who promoted the event. "I know some other people who have sponsored LaFevre seminars and I think they're pretty much the same kind of people." *Id.* at 92. This witness went on to testify that "I think people who attend this kind of seminar, it helps them to get a broad picture, a philosophical outlet, direction, and yes, I think that helps them a lot." *Id.* at 93. Although the evidence presented by the customer-witness circumstantially connects the seminars

with a business purpose, we agree that the Company failed to meet its burden in showing a direct relationship between the seminar's focus upon individual character development and the Company's solicitation of new customers. We conclude that the finding of the Tax Court was not clearly erroneous.

AFFIRMED.

BALDOCK, Circuit Judge, dissenting.

I agree with the majority that this case involves review of a mixed question of law and fact, whether educational seminar expenses of the taxpayer are deductible as ordinary and necessary business expenses pursuant to I.R.C. § 162. *See* Rev.Rul. 76–71, 1976–1 C.B. 308, 310 (educational expenses incurred by employer for employees are deductible as ordinary and necessary business expenses if test of Treas. Reg. § 1.162–5 met). There appears to be no disagreement that the subjects taught at the seminars, economic history, comparative economics and philosophy, were valuable to the participants. The tax court and the majority have concluded that the taxpayer-company failed to establish a direct relationship between the seminars and improved job performance so as to entitle the taxpayer to deduct the expenses of the seminars as employee educational expenses. Majority Opinion at 1217; *Love Box Co. v. Comm'r,* 49 T.C.M. (CCH) 479, 481 (1985). Also, the tax court and the majority have concluded that the seminar expenses are not deductible as advertising expenses because the taxpayer failed to prove that the seminars kept the taxpayer's name before the public or resulted in increased patronage. Majority Opinion at 1218; *Love Box Co.,* 49 T.C.M. at 483. I dissent from these conclusions.

The majority has denied the educational expense deduction because "the seminars emphasized broad attributes which would be beneficial in any line of work or person-

al endeavor." Majority Opinion at 1217. But merely because the seminars might benefit participants both inside and outside the work environment does not negate the evidence that the seminars had a positive affect on job-related skills. Even assuming that the taxpayer-company's president or its employees benefited personally, all that need be shown is that the seminars maintained or improved skills required in the taxpayer's business.

And on this point, the evidence is uncontroverted. The taxpayer-company had sponsored these seminars annually since 1949 as a way of motivating employees to take individual responsibility for their daily tasks. Rec. tr. at 18–19. The seminars reflect attributes of the company's management philosophy, for example, dependability and responsiveness in the marketplace. The company's president testified that the seminars were designed to reinforce "an image with our customers that they would absolutely be able to depend upon us no matter what happened." *Id.* at 20. Attendance at the seminars was not required, but attendance was used to identify those who might be suitable for advancement. *Id.* at 22. The president also testified that the management philosophy at the company was a key factor in its success in the corrugated box market. *Id.* at 25, 47. Indeed, the company's sales grew from $2.5 million in 1956 to over $24 million in 1979, and the number of employees increased from 45 employees in fiscal year 1956 to about 600 employees in fiscal year 1978. The vice-president and general manager of the company testified that the seminars had contributed to the success of the company, had helped retain better employees and had improved relationships with suppliers and customers. *Id.* at 63–64. The seminars were consistent with the way the company sought to differentiate itself from the competition (the large integrated box manufacturers) because the seminars stressed careful attention to customer needs. *Id.* at 67–68. One of the company's employees, who had worked at another box manufacturer, testified that the ideas presented at the seminars improved his performance. *Id.* at 86. ("It has made me a better salesman. My sales went from, well, it increased about six-fold in seven years. We must be doing something right.").

Long-run survival of a manufacturing organization often depends upon a clear sense of direction and an ability to forecast future business trends. Strategic planning is all-important to a business in a competitive environment, because those businesses unable to adapt to change will disappear from the market in the long run. Just as important as a company's technological resources are the company's human resources, the people who make up the company. The unanimous testimony was that the seminars developed the human resources of the company and instilled a clear sense of the company's direction in the participants. On the first point, the seminars are analagous to a Dale Carnegie course which improves the human relations skills of the participants. On the second point, the seminars emphasized the values which had made the company a success and insured its long-range survival. Among excellent companies, similar expenditures for such purposes would not be unusual. The authors of a best-selling work on the management of successful companies have written: "Every excellent company we studied is clear on what it stands for, and takes the process of value shaping seriously. In fact, we wonder whether it is possible to be an excellent company without clarity on values and without having the right sorts of values." T. Peters & R. Waterman, In Search of Excellence, 280 (1982). Thus, the seminar expenditures ought to be deductible as ordinary and necessary business expenses because they are incurred so that the company will prosper.

The majority's legal conclusion regarding the educational expense issue rests in part on discounting the uncontroverted testimony of taxpayer's employees and customers. What is unusual about this case is that the taxpayer put on testimony of three company employees and two representatives of customers, and the testimony pertaining to the direct benefits of the expenditures to

the taxpayer-company was disregarded. This is not a case where the Commissioner refuted the evidence of the taxpayer, as some of the facts were stipulated and the Commissioner called no witnesses. On cross-examination, the Commissioner unsuccessfully attempted to characterize the seminar expenditures as political and non-deductible under Treas.Reg. § 1.162–20. The Commissioner did establish that the seminars would be useful in other endeavors, but that, in my view, cannot be a bar to deductibility.

Without question, we are bound by the findings of the tax court unless clearly erroneous, but I fear that the tax court and the majority have substituted their judgment for that of the company, and have concluded that, because the education provided was too general and did not reach enough employees, it could not bear a proximate relationship to the company's business. This approach is not in keeping with the current regulation which "established a more objective standard for determining whether the cost of education may be deducted as a business expense." *Carroll v. Comm'r*, 418 F.2d 91, 94 (7th Cir.1969). The tax court said:

> The relationship between the seminars and the personal interests of Robert D. Love, however, is obviously more than coincidental. The generalized and self-serving testimony of petitioner's witnesses with respect to the benefits to be derived from the seminars cannot, therefore, carry petitioner's burden of proof, *regardless of the failure or inability of respondent to contradict their assertions.*

*Love Box Co.*, 49 T.C.M. at 483 (emphasis added). Merely because the witnesses who testified on behalf of the taxpayer support the taxpayer's contentions does not mean that their testimony is to be disregarded as self-serving. *Weir v. Comm'r*, 283 F.2d 675, 680 (6th Cir.1960); *cf. Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984) (specific, legitimate reasons must be given for disregarding the opinion of a social security claimant's treating physician). Here, the taxpayer's employees were clearly the most knowledgeable about the appli-cability of the education to the company's strategic plan. Their testimony is reasonable and uncontradicted. Consequently, the taxpayer ought to prevail on the educational expenditure issue.

For similar reasons, I cannot agree with the decision of the tax court and the majority to deny a deduction for institutional or "goodwill" advertising expenses under Treas.Reg. § 1.162–20(a)(2). Again, the company's president and general manager and representatives of two large corporate customers testified as to the promotional value of the seminars. Rec. tr. at 35–36, 68, 88–90, 97–98. Treas.Reg. § 1.162–20(a)(2) merely requires that these types of expenditures are deductible if they "are related to the patronage the *taxpayer* might reasonably expect in the future." (Emphasis added.) The employees of the taxpayer so testified, but the majority would require the taxpayer to prove that the seminars influenced the customers to become customers. Majority Opinion at 1217. That is not the test. Nor must there necessarily be a showing that the seminar expenses assisted in the company's "solicitation of new customers." *Id.* at 1218. Promotional expenses designed to retain old customers surely are deductible. All of the uncontradicted evidence indicates that making the extra places available to representatives of customers is "related to the patronage the *taxpayer* might reasonably expect in the future." Treas.Reg. § 1.162–20(a)(2). The regulation's test is one of a reasonable prospect of securing future patronage. This does not require market studies and strict quantitative proof (which probably would cost more than the seminars); the majority and the tax court simply place too great a burden on the taxpayer to prove *post hoc* the effect of promotional expenditures.

I would reverse.